# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:23-cv-00321-MR-WCM

| | |
|---|---|
| NATIONAL NURSES ORGANIZING COMMITTEE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) **MEMORANDUM OF** |
| MH HOSPITAL MANAGER, LLC, | ) **DECISION AND ORDER**<br>) |
| Defendant. | )<br>)<br>) |

**THIS MATTER** is before the Court on the parties' cross Motions for Summary Judgment [Docs. 9, 12].

## I. PROCEDURAL BACKGROUND

On November 3, 2023, Plaintiff National Nurses Organizing Committee ("Plaintiff") filed this action against Defendant MH Hospital Manager, LLC ("Defendant") under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) and Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10. [Id.]. The Plaintiff seeks to vacate an arbitration award on the grounds that it was not in accordance with the parties' collective bargaining agreement ("CBA"). [Id.].

On December 4, 2023, MH Hospital Manager, LLC, filed an answer and a counterclaim against National Nurses Organizing Committee, seeking to confirm and enforce the arbitration award. [Doc. 4]. On February 7, 2024, the parties both filed Motions for Summary Judgment. [Docs. 9, 12]. On February 28, 2024, the parties both filed their Responses in Opposition to each's Motion. [Docs. 14, 15]. On March 13, 2024, the parties both filed their Replies in Support of their Motions. [Docs. 16, 17].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Judicial review of arbitral awards in the collective bargaining context is "among the narrowest known to the law." Union Pac. R. Co. v. Sheehan, 439 U.S. 89, 91 (1978). The court is not entitled to decide the merits of the dispute. Rather, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Major League Baseball Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam) (internal quotations omitted). Nor is the court permitted to second-guess factual determinations. "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for

a reviewing court to refuse to enforce the award." Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 39 (1987)). The rationale behind this deference to the arbitrator is that it is the arbitrator's interpretation of the facts and the agreement that the parties bargained for, so it is the arbitrator's ruling that the parties should get, so long as the arbitrator "did his job." See Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996); United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960).

The only circumstance in which the court may vacate an arbitral award on the merits is "when the arbitrator strays from interpretation of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" Garvey, 532 U.S. at 509 (quoting Enterprise Wheel & Car, 363 U.S. at 597 (alterations in original)). In the Fourth Circuit's words, "we may vacate an arbitrator's award only if it 'violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong.'" Yuasa, Inc. v. Int'l Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, 224 F.3d 316, 321 (4th Cir. 2000) (quoting Champion Int'l Corp. v. United Paperworkers Int'l Union, 168 F.3d 725, 729 (4th Cir. 1999)).

The central consideration in determining whether the award "drew its essence" from the contract is the text of the agreement. See Mountaineer Gas, 76 F.3d at 608. Thus, "[w]hen determining whether the arbitrator did his job, [the] court examines: (1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." Id.

## III. FACTUAL BACKGROUND

The following facts are not in dispute, except where otherwise noted.

The Plaintiff is a labor union that represents registered nurses employed at Mission Hospital in Asheville, North Carolina. [Doc. 1: Compl. at ¶¶ 3-4]. The Defendant operates Mission Hospital and employs registered nurses that are represented by the Plaintiff. [Id. at ¶ 5]. The parties entered into a CBA effective July 2, 2021, to July 2, 2024. [Id. at ¶ 9]. Article 40, Section 2 of the collective bargaining agreement provides that the hospital will provide the union with one bulletin board in each break room of each nursing department as the "sole and exclusive" locations for the union to post notices on hospital property. [Doc. 1-1: CBA at 60]. The CBA further specifies:

> Each notice shall be signed and dated by the Union Representative or Nurse Representative posting the

notice. Copies of Union materials to be posted shall be delivered to the Human Resources Department forty-eight (48) weekday hours prior to being posted. Undisputed material to be posted will be limited to appropriate Union business and will not contain any inflammatory material or political material related to a political party, politician or public election. No materials will be posted that are critical of any Hospital Registered Nurse or of any policy relating to patient care or the delivery of patient care at the Hospital. If the Hospital does not agree that the posting is "appropriate" as described above, the document will not be posted unless and until the dispute is resolved as provided below.

In the event of a dispute as to the appropriateness of a posting, the parties shall first meet, in person or by phone, and discuss the matter in an effort to resolve the dispute amongst themselves. Second, if the dispute is not resolved within twenty-four (24) hours, the parties shall engage the services of a mutually agreeable arbitrator and shall participate in expedited arbitration. The arbitrator shall hear and rule on the dispute within twenty-four (24) hours (forty-eight (48) hours from the inception of the dispute) and shall have the authority to fashion an appropriate remedy including the revocation of the posting privilege. The arbitration hearing may be conducted telephonically if necessary. The parties shall each bear their own costs and fees incurred in preparing and presenting their case to the arbitrator. The charges, fees and expenses of the arbitrator shall be borne and paid for by the losing party.

[Id.].

The CBA also contains provisions for when and how union representatives may access the hospital, and how disputes over such access are to be resolved. [Id. at 60-63]. Specifically, the CBA states:

> The Hospital shall allow duly authorized Union Representatives to visit the Hospital to ascertain whether or not this Agreement is being observed and to assist in adjusting grievances, to post literature in accordance with Section 2, or to distribute literature during conference room events in accordance with Section 4 and within the confines of the conference room (with the Union expressly agreeing to clean up all of its property at the conclusion of the event). . . .
>
> If the Hospital believes a Union Representative has violated the access privileges identified in this Article, the Hospital may revoke that Union Representative's access privileges (but not the Union's access privileges) pending resolution of the dispute. If the Union wishes to challenge this action, they may advance the issue directly to arbitration under Article 1, Arbitration, which, if the Union requests, will be conducted within forty-eight (48) hours of the inception of the dispute.

[Id.].

In December 2022, a dispute arose about certain flyers that the Plaintiff's nurse representatives distributed in the hospital. [Doc. 1 at ¶ 15]. The flyers were posted in the Cardiovascular Intensive Care Unit ("CVICU") breakroom and concerned a vote of no confidence regarding the CVICU Nurse Manager; the fliers also included the name, telephone number, and email address of union representative Brian Walsh ("Walsh"). [Doc. 4: Def.'s

Countercl. at ¶¶ 13-14]. The Defendant contended that the Plaintiff's posting of the flyers violated the CBA. [Doc. 1 at ¶ 15]. The Defendant accordingly revoked Walsh's hospital access privileges for a period of 30 days. [Doc. 4 at ¶ 16].

On January 17, 2023, three days before Walsh's 30-day access ban was set to expire, the other designated union representative, Neil Pettit ("Pettit"), requested access to the hospital for the following day, January 18, 2024. [Id. at ¶ 17]. The Defendant believed that Pettit was also involved in the same access violations as Walsh,[1] and therefore denied him access until the same 30-day period expired on January 20, 2023. [Id. at ¶¶ 18-19].

The Plaintiff then submitted a grievance requesting expedited arbitration challenging the revocation of access privileges for both Walsh and Pettit. [Doc. 1 at ¶ 17]. The parties selected Edward M. Davidson as the arbitrator, and an arbitration hearing was held on July 28, 2023. [Id. at ¶ 18]. The issue submitted to the arbitrator was: "Did the Employer violate the Collective Bargaining Agreement Article 40, Section 5 by revoking access to the Employer's property for Union Representatives Brian Walsh and Neil Pettit in December 2022 and January 2023 respectively? If so, what should be the remedy?" [Id. at ¶ 19].

---

[1] The Plaintiff denies that Pettit was involved in the access violations. [Doc. 1 at ¶ 16].

The arbitrator found that Walsh "assisted in the development, cost coverage and production of the flyers," and that the Plaintiff union's nurse representatives posted flyers in areas not permitted under the CBA. [Doc. 1-2 at 8]. Therefore, the arbitrator found that the Defendant was not in violation of the CBA in denying hospital access to Walsh. [Id. at 8-9]. However, the arbitrator found that Pettit was not proven to be involved in posting the flyers, and therefore, denial of access to Pettit was in violation of the CBA. [Id.].

The parties now both move for summary judgment, with the Plaintiff seeking to vacate the award and the Defendant seeking to enforce the award. The Defendant also moves for an award of attorneys' fees.

## III. DISCUSSION

### A. The Arbitrator's Award

As discussed above, the Court's review of an arbitration award is limited and essentially looks to whether the award drew its essence from the CBA. See Mountaineer Gas, 76 F.3d at 608. "[A]n award fails to draw its essence from the agreement if an arbitrator has 'based his award on his own personal notions of right and wrong,'" or if it "'disregards or modifies unambiguous contract provisions.'" Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 235 (4th Cir. 2006) (first quoting Upshur Coals Corp. v. United

Mine Workers, Dist. 31, 933 F.2d 225, 229 (4th Cir.1991); then quoting Mo. River Serv., Inc. v. Omaha Tribe of Neb., 267 F.3d 848, 855 (8th Cir. 2001)) (alterations omitted).

"When the parties bargain for an arbitrator's construction of a contract, 'the courts have no business overruling him because their interpretation of the contract is different from his.'" U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000) (quoting United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)). The arbitrator may not ignore the plain language of the contract, but given that the parties have authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987).

Here, the Plaintiff argues that the arbitrator sustained a revocation of access without finding any violation of the CBA's access provisions, and therefore the arbitrator's decision did not draw its essence from the CBA and must be vacated. [Doc. 13 at 16]. The Defendant argues that the arbitrator properly interpreted and applied the CBA. [Doc. 10 at 10]. The key issue is whether "access privileges" as used in Article 40, Section 5 of the CBA refers

to all of the privileges enumerated in Article 40, or only those listed under "Access for Union Representatives" in Section 3.

The parties dispute the arbitrator's interpretation of "access privileges" in the CBA. The term is not defined in the CBA, but rather, in the relevant provision, simply refers to "the access privileges identified in this article." The arbitrator interpreted this to mean all of the privileges in Article 40, including the use of bulletin boards by the union, hospital access for union representatives, and the use of conference rooms by the union. Even if this Court were to find that the arbitrator misread the CBA, which it does not so find, the arbitrator's interpretation of the CBA certainly draws its essence from the CBA and does not ignore the plain meaning of "access privileges" or any other provision therein.

Indeed, most of the sections in Article 40 involve some kind of "access," not just Section 3. [Doc. 1-1 at 60-62]. For example, Section 1 gives union representatives access to nurse orientation rooms for the purpose of presenting union information to new employees. [Id. at 59]. Section 2 provides that the hospital will provide the union with a bulletin board in each break room as the exclusive place that union members can post union notices. [Id. at 60]. Section 4 dictates under what conditions the hospital will give the union access to conference or meeting rooms within the hospital.

[Id. at 62]. All of these provisions define the various ways that the union may "access" the hospital. As such, the award does not disregard or modify any provision of the CBA, and instead reasonably interprets the relevant provisions.

For the foregoing reasons, the Court will grant the Defendant's motion for summary judgment and affirm the arbitration award.

### B. Attorneys' Fees

"Although an award of attorney's fees is not specifically authorized by the Labor Management Relations Act, fees may be awarded against a party who unjustifiably refuses to abide by an arbitrator's award." Media Gen. Operations, Inc. v. Richmond Newspapers Pro. Ass'n, 36 F. App'x 126, 133 (4th Cir. 2002). Where a challenge to an arbitration award "goes to . . . whether [the] award draws its essence from the contract, the standard for assessing its justification is whether it has any arguable basis in law. Under this standard, such a challenge is justified unless it literally has no reasonably arguable legal support." Id. at 133-34 (quoting United Food & Commercial Workers v. Marval Poultry Co., 876 F.2d 346, 351 (4th Cir.1989)) (internal quotations and citations omitted).

In its motion, the Defendant requests attorneys' fees on the grounds that the Plaintiff's challenge has no arguable basis in law. The Plaintiff

argues that its position is supported by Fourth Circuit precedent, but that even if this Court finds against it on the merits, it cannot be said that its position has no arguable legal support.

A reasonable interpretation of the CBA and the term "access privileges" could have plausibly led to a different result.  See <u>Clinchfield Coal Co. v. Dist. 28, United Mine Workers of Am. & Loc. Union No. 1452</u>, 720 F.2d 1365, 1369 (4th Cir. 1983).  Therefore, under the "relatively lenient" standard for "any arguable basis in law," the Plaintiff has shown that its challenge to the award was justified.  <u>United Food & Com. Workers, Loc. 400 v. Marval Poultry Co.</u>, 876 F.2d 346, 351 (4th Cir. 1989).  For the foregoing reasons, the Court declines to award the Defendant attorneys' fees.

## ORDER

**IT IS THEREFORE ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 9] is **GRANTED,** and the Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED.**  The Plaintiff's action is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Defendant's request for attorneys' fees is **DENIED.**

The Clerk is respectfully directed to enter a judgment consistent with this Order and terminate this civil action.

**IT IS SO ORDERED.**

Signed: March 25, 2024

Martin Reidinger
Chief United States District Judge